NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 6 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> GELASIO JOHNSON GUERRERO, <br><br> Defendant - Appellant. | No. 24-26 <br><br> D.C. No. 3:22-cr-00054-LRH-CLB-1 <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Submitted March 3, 2025[**]
Las Vegas, Nevada

Before: RAWLINSON, MILLER, and DESAI, Circuit Judges.

Following a jury trial, Gelasio Guerrero was convicted on two counts of

assault with a dangerous weapon within Indian country, in violation of 18 U.S.C.

§ 113(a)(3). He was sentenced to 63 months of imprisonment, to be followed by

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

three years of supervised release. Guerrero now appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Guerrero's sole argument on appeal is that the evidence was insufficient to allow the jury to find him guilty. When considering a challenge to the sufficiency of the evidence, we "construe the evidence 'in the light most favorable to the prosecution,' and only then determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Section 113(a)(3) has three elements: the defendant must commit an assault, using a dangerous weapon, with the intent to do bodily harm. *United States v. Rocha*, 598 F.3d 1144, 1157 (9th Cir. 2010). The government can prove assault by showing "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *United States v. Lewellyn*, 481 F.3d 695, 697 (9th Cir. 2007) (quoting *United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir. 1976)). An object is a dangerous weapon if it is either "inherently dangerous" or otherwise "'used in a manner likely to endanger life or inflict great bodily harm.'" *United States v. Riggins*, 40 F.3d 1055, 1057 (9th Cir. 1994) (quoting *United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982) (per curiam)).

1. Sufficient evidence supports Guerrero's conviction for assaulting Officer Almaraz with a firearm. Almaraz's body-camera footage shows Guerrero knocking him to the ground before continuing to attack him. Almaraz testified that Guerrero punched him repeatedly and then tried to "pull [his gun] out of the holster." Almaraz stated that he "was scared" and "thought [he] was going to die if [he] didn't get control back of that gun." He explained that Guerrero "had his hand secured around [the] weapon" and "was grabbing on it" when it "went off," shooting Almaraz in the leg. Construing the evidence in the light most favorable to the government, a rational juror could have found that when Guerrero grabbed the firearm (a dangerous weapon), he threatened—and intended—to injure Almaraz, demonstrated his apparent ability to do so, and thereby caused Almaraz to reasonably apprehend immediate bodily harm.

2. Sufficient evidence also supports Guerrero's conviction for assaulting Almaraz with medical shears. On this count, Guerrero argues only that the shears were not a dangerous weapon because they had a blunt tip. At trial, however, Almaraz testified that even the blunt part of the shears would cut through skin if used with enough force, adding that the shears "can cut right through a penny." Explaining how he felt when Guerrero grabbed his medical shears from his vest and said, "I'll stab you in the neck," Almaraz testified: "I thought I was going to die. And I didn't know if he was going to kill me with my scissors or my gun . . . ."

24-26

Given that evidence, a rational juror could have determined that the shears were a dangerous weapon. *See Riggins*, 40 F.3d at 1057.

3. A rational juror could have found that Guerrero did not act in self-defense or in defense of others. *See United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012). Guerrero argues that he reasonably believed that force was necessary to defend himself and his children against unlawful force—an element of his asserted defense—because Almaraz attempted to tase him within 90 seconds of approaching him, and "part of the taser apparently struck his child." Construing the evidence in the light most favorable to the government, however, a rational juror could have determined that Guerrero's belief was not reasonable. Almaraz approached Guerrero because he had a warrant for his arrest and knew that Guerrero had been ordered not to have contact with his children, who were with him when Almaraz found him. Within those 90 seconds, Guerrero failed to cooperate—first by moving away from Almaraz, and then by holding his son to shield himself from the taser. Almaraz attempted to tase Guerrero only after pulling him away from his son. The evidence supports the jury's rejection of Guerrero's affirmative defense.

**AFFIRMED.**

24-26